UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CECILIA M. FANTROY,

       Plaintiff,

v.                          Case No. 8:12-cv-1940-T-33EAJ

PUBLIX SUPER MARKETS, INC.,

       Defendant.

_____/

**ORDER**

    This cause comes before the Court pursuant to Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment (Doc. # 30), filed on October 17, 2013.  Plaintiff Cecilia M. Fantroy filed a response in opposition to the Motion (Doc. # 36) on November 15, 2013.  For the reasons that follow, the Court grants Publix's Motion.

**I.   Background**

    On February 23, 2011, Adecco Staffing Employment Agency placed Fantroy as a "temp" in the Publix Bakery Plant as an RTS Crème Cake Packer. (Suzanne Pate Decl. Doc. # 33 at ¶ 3; Fantroy Dep. Doc. # 37 at 48:22-23). Thereafter, on August 22, 2011, Publix hired Fantroy as a regular full-time Crème Cake Packer. (Suzanne Pate Decl. Doc. # 33 at ¶ 4). For the duration of Fantroy's tenure with Publix, Fantroy worked the

midnight shift – 12:00 midnight until 8:30 a.m. (Fantroy Dep. Doc. # 37 at 58:19-24, 83:5-7).

On August 22, 2011, Fantroy attended the Publix Manufacturing New Associate Orientation (Suzanne Pate Decl. Doc. # 33 at ¶ 5). Although employees are not provided a paper copy of the employee handbook (Lisa Gaye Pate Dep. Doc. # 40 at 20:21-23; Rina Harrell Dep. Doc. # 38 at 20:1-6), employees, including Fantroy, are instructed on where to find the handbook materials online (Lisa Gaye Pate Dep. Doc. # 40 at 20:23-25; Fantroy Dep. Doc. # 37 at 92:23-25, 93:1-2).

At orientation, however, employees did receive a paper copy of the Attendance and Punctuality Policy for Manufacturing Quick Reference Guide. (Fantroy Dep. Doc. # 37 at 96:9-15, Ex. 4). The Publix Bakery Plant is part of Publix's Manufacturing Division. (Rina Harrell Decl. Doc. # 31 at ¶ 2). The Quick Reference Guide defines a no-call, no-show as follows:

> Failure to call in or otherwise advise management of an absence before the scheduled start of an associate's shift or, in rare emergency situations, as soon as reasonably possible thereafter. No call/no shows will be considered an absence for the purpose of this policy. No call/no shows are generally treated more severely than other absences and may result in additional discipline.

(Fantroy Dep. Doc. # 37 at 97:6-10, Ex. 4; Doc. # 41, Ex. 9).
Under Publix's no-call, no-show policy: (1) calling in after
the start of a shift is considered a no-call, no-show; (2)
calling in before the start of a shift to say you would be
late, and then never showing up to work, is considered a no-
call, no-show; and (3) calling to say you would "try to make
it" and never showing up is considered a no-call, no-show.
(Rina Harrell Decl. Doc. # 31 at ¶ 3).

During her deposition, Fantroy admitted that she knew,
beginning in August of 2011, that she had to call in prior to
the start of her shift or it would be considered a no-call,
no-show. (Fantroy Dep. Doc. # 37 at 97:13-17, 104:12-17).
Furthermore, Fantroy was aware that two no-call, no-shows
within a six month period could result in termination of an
associate. (Id. at 98:5-8, 104:25, 105:1-3).

Also at the start of their employment, associates are
provided a card that contains the attendance line phone
number. (Rebekah L. Orr Dep. Doc. # 39 at 15:3-17). The
attendance line – which associates are to call in the event
they will be late or absent – is a recorded telephone line
where associates choose the department and leave a detailed
message that includes the time, the date, the reason why the
associate will be absent or running late and when the

3

associate will return to work. (Fantroy Dep. Doc. # 37 at 81:21-25, 82:8-10). Assistant Department Managers or Utility Trainers retrieve these recorded messages and are instructed to record the information in an attendance book. (Rebekah L. Orr Dep. Doc. # 39 at 16:8-13; Lisa Gaye Pate Dep. Doc. # 40 at 25:4-5).

## A.   **First Termination**

On May 31, 2012, Publix terminated Fantroy because she exceeded the permissible number of absences as a result of contracting conjunctivitis, also referred to as pink eye. (Lisa Gaye Pate Decl. Doc. # 32 at ¶ 2). Publix's Personnel Records Department concluded that Fantroy was not eligible for leave under the Family and Medical Leave Act ("FMLA") because Fantroy had not been employed for one year. (Id. at ¶ 3). However, in considering Fantroy's eligibility for FMLA leave, Publix's Personnel Records Department failed to include the time that Fantroy was employed as a "temp" as required by the FMLA implementing regulations. (Id. at ¶ 4; Rina Harrell Dep. Doc. # 38 at 33:16-19).

Fantroy filed a complaint in this Court on August 27, 2012. (Doc. # 1). The complaint set forth two counts: (1) Interference with FMLA Protected Leave and (2) FMLA Retaliation. (Id.). As a result of Publix's oversight

4

regarding Fantroy's entitlement to FMLA leave, Publix and Fantroy voluntarily entered into a settlement agreement on September 13, 2012. (Doc. # 30-3; Fantroy Dep. Doc. # 37 at 123:2-12, 123:8-12, 124:8-17, 125:21-24).

Although the parties executed the settlement agreement on September 13, 2012, neither party notified the Court of the settlement.  Such an oversight constitutes a violation of Local Rule 3.08, which states "it shall be the duty of all counsel to immediately notify the Court upon the settlement of any case."  As a result of the parties' omission, this case remained open.

**B.    Second Termination**

**1.    First Day Reinstated**

Upon execution of the settlement agreement, Publix reinstated Fantroy to her former position as a full time Crème Cake Packer and scheduled Fantroy to return to work on October 1, 2012. (Doc. # 30 at 6; Doc. # 30-3; Doc. # 36 at 1; Fantroy Dep. Doc. # 37 at 140:9-16). However, there is discrepancy in the record as to whether Fantroy was to return to work at midnight on October 1, 2012, or at midnight on October 2, 2012. (Fantroy Dep. Doc. # 37 at 140:19-24; Lisa Gaye Pate Dep. Doc. # 40 at 35:23-24, 37:2-8). Regardless, even if Fantroy had been scheduled to return to work at midnight on

October 1, 2012, Publix did not count Fantroy's "failure to show up for work as scheduled on October 1, 2012, as a 'no call/no show.'" (Rina Harrell Decl. Doc. # 31 at ¶ 4; Rina Harrell Dep. Doc. # 38 at 49:12-15).

### 2.   October 5, 2012

On the night of October 4, 2012, at roughly 11:45 p.m. Fantroy went to the emergency room due to an infection in her finger. (Lisa Gaye Pate Dep. Doc. # 40 at 39:16-19, 48:18-20). Thereafter, around 1:48 a.m. on October 5, 2012, Fantroy called the attendance line to report her absence and explain the situation. (Id. at 48:10-13, 48:21-25, 49:1; Fantroy Dep. Doc. # 37 at 142:5-7).

During her deposition, Fantroy admitted that the October 5, 2012, absence should be counted as a no-call, no-show:

> Q. And on 10/5 did you call in at 1:48 a.m. to say that you had an infection?
>
> A. Yes.
>
> Q. And you did not come to work; correct?
>
> A. Correct.
>
> Q. And under Publix's policy, that's a no call, no show, correct.
>
> A. Yes.

(Fantroy Dep. Doc. # 37 at 142:5-12).

### 3.   October 15, 2012

Before her shift on October 15, 2012, at roughly 6:00 p.m. Fantroy called the attendance line to inform Publix that she was having car trouble and was unsure whether she was going to be able to make it to work. (Doc. # 30 at 7; Doc. # 36 at 7; Fantroy Dep. Doc. # 37 at 90:21-25, 143:5-8). Rebekah L. Orr retrieved Fantroy's message at 11:45 p.m. on the evening of October 14, 2012, fifteen minutes before the start of Fantroy's scheduled shift. (Rebekah L. Orr Dep. Doc. # 39 at 47:21-25, 48:1-4). Although Fantroy was trying to get someone to pick her up so she could go to work, Fantroy did not make it into work due to the car trouble. (Fantroy Dep. Doc. # 37 at 143:21-22, 144:3-7).

On October 15, 2012, between 8:00 a.m. and 8:30 a.m., Fantroy called and spoke with Lisa Gaye Pate, and recounted the situation from the prior evening. (Fantroy Dep. Doc. # 37 at 143:13-16). Lisa Gaye Pate and Fantroy discussed the consequences of the absence and determined that Fantroy would be placed on DL2 – level 2 discipline - as a result. (Id. at 143:17-22; Lisa Gaye Pate Dep. Doc. # 40 at 56:7-13, 57:1-4; Doc. # 41 at 32). Upon returning to work, Fantroy signed the

paperwork indicating she was absent for her October 15, 2012, shift, and she would be placed on DL2 status as a result. (Fantroy Dep. Doc. # 37 at 143:20-22). However, on October 18, 2012, Lisa Gaye Pate informed Fantroy that she was going to be considered a no-call, no-show for her October 15, 2012, absence. (Id. at 143:23-25, 144:1-2).

As a result of failing to abide by Publix's no-call, no-show policy – specifically having two no-call, no shows within two weeks – Fantroy was terminated from her position at Publix on October 18, 2012.[1] (Doc. # 30 at 7; Doc. # 36 at 8; Fantroy Dep. Doc. # 37 at 108:15-25, 109:1-2; Lisa Gaye Pate Dep. Doc. # 40 at 76:6-8). On January 10, 2013, Fantroy filed an amended complaint in this action, which had remained open despite the parties' settlement, alleging (1) Interference with FMLA Protected Leave and (2) FMLA Retaliation. (Doc. # 5). On October 17, 2013, Publix filed the instant Motion for Summary Judgment. (Doc. # 30). Fantroy responded in opposition to the Motion on November 15, 2013. (Doc. # 36). The Court has reviewed the Motion, the attachments thereto

---

[1] When discussing her second termination, Fantroy cites to the deposition of William Noah. However, Noah's deposition has not been filed on the record with this Court. As such, the Court will not consider Fantroy's use of Noah's deposition in making its determination.

8

and the responses, and is otherwise fully advised in the premises.

## II. __Legal Standard__

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but

required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

III. **Discussion**

The FMLA authorizes an eligible employee to take up to twelve weeks of unpaid leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" that right. Id.

The Eleventh Circuit has recognized that the FMLA creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." Id. (quoting Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)(internal citations omitted)). Fantroy's amended complaint alleges two counts: (1) Interference with FMLA Protected Leave and (2) FMLA Retaliation. (Doc. # 5).

A.    **FMLA Interference**

11

According to the Eleventh Circuit, "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206-07. "Alternatively, an employee may demonstrate that the employer interfered with the FMLA benefit." Lowery v. Strength, 356 F. App'x 332, 334 (11th Cir. 2009). Although a retaliation claim requires the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," the employer's intent is immaterial in an interference claim. Strickland, 239 F.3d at 1207.

Because it is undisputed that the parties executed a settlement agreement on September 13, 2012, Fantroy has waived any and all FMLA interference claims she may have had or could have raised in her original complaint. As such, the Court will limit its determination as to whether Fantroy has adequately demonstrated a claim for FMLA interference that occurred during her reinstatement at Publix, which would not be barred by the settlement agreement and would withstand Publix's Motion for Summary Judgment.

Upon review of the record, Fantroy has failed to allege, much less prove, that during the time between Fantroy's

reinstatement, October 1, 2012, and her second termination, October 18, 2012, she suffered a "serious health condition" that made her unable to perform the functions of a Crème Cake Packer, which rendered her eligible for FMLA-qualifying leave. During her deposition, Fantroy was asked:

> Q. [W]as there any medical condition the second time, for the second termination, that you believe you should have gotten FMLA for?
>
> A. After I was reinstated?
>
> Q. Right.
>
> A. Not that I know of.

(Fantroy Dep. Doc. # 37 at 122:3-8).

In fact, there is no indication that Fantroy ever applied for FMLA leave during the relevant time period or notified Publix that her absences – October 5, 2012, and October 15, 2012, – were due to a potentially FMLA-qualifying reason. See Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005)(discussing the FMLA requirement that employees provide thirty days' advance notice of leave, when the need to take leave is foreseeable or as soon as practicable if the leave is not foreseeable); see also Drago v. Jenne, 453 F.3d 1301, 1306 (11th Cir. 2006)(noting that an employee taking

FMLA leave must give his employer notice of the probable duration of the condition requiring the leave).

According to the record, Fantroy called the attendance line on October 4, 2012, indicating she was on her way to the emergency room because she had an infection in her finger. (Lisa Gaye Pate Dep. Doc. # 40 at 39:16-19, 48:18-20). However, the record is void of evidence demonstrating that Fantroy applied for FMLA leave or considered the infection in her finger a FMLA-qualifying reason. Further, Fantroy's October 15, 2012, absence was the result of her experiencing car trouble, not due to a "serious health condition" or other FMLA-qualifying reason.

As a result, Fantroy has failed to demonstrate that she had a "serious health condition" entitling her to FMLA benefits. See Lee v. U.S. Steel Corp., 450 F. App'x 834, 837-38 (11th Cir. 2012). As such, this Court finds that there is no genuine issue of material fact as to whether Publix engaged in interference with Fantroy's FMLA rights during the relevant time period – October 1, 2012 – October 18, 2012. Therefore, this Court grants Publix's Motion for Summary Judgment as to Fantroy's FMLA interference claim.

**B.   FMLA Retaliation**

In order to state a prima facie case of FMLA retaliation, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Paris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000). "Unlike an interference claim, a plaintiff who asserts a retaliation claim must prove that the employer acted with the requisite intent to retaliate." Johnson v. Morehouse College, Inc., 199 F. Supp. 2d 1345, 1359 (N.D. Ga. 2001).

Retaliation can be shown "through either direct or indirect evidence, the latter of which requires applying the burden shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1372 (N.D. Ga. 2008).

> Under this framework there are three steps: (1) the plaintiff must first sufficiently allege a prima facie case, at which point a rebuttable presumption of discrimination arises; (2) the burden then shifts to the employer to show a legitimate, non-discriminatory reason for taking the action; (3) if the employer shows a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's reason is really a pretext.

Id. (citing McDonnell Douglas Corp., 411 U.S. at 802–05). Despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, the ultimate burden of persuading the trier of fact that the defendant intentionally retaliated against the plaintiff remains at all times with the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the present action, Fantroy has not provided the Court with direct evidence demonstrating that Publix engaged in retaliation. Instead, Fantroy has provided indirect, circumstantial evidence in her attempt to establish retaliation. As such, this Court will analyze Fantroy's FMLA retaliation claim under the McDonnell Douglas framework.

### 1.   **Prima Facie Case of Retaliation**

In its Motion, Publix contends that because Fantroy settled her initial FMLA retaliation claim against Publix, Fantroy has waived her current FMLA retaliation claim against Publix. However, in response, Fantroy submits that her current FMLA retaliation claim is not barred by the settlement agreement "because the second termination occurred after the settlement agreement was executed. Fantroy's . . . retaliation [claim is] based on a new act of retaliation not released by the settlement agreement." (Doc. # 36 at 11).

16

Specifically, in the amended complaint, Fantroy contends: "after [Fantroy] was reinstated [Publix] again fired [Fantroy] because she had taken leave under the FMLA" (Doc. # 5 at ¶ 17), and "[Publix] retaliated against [Fantroy] because of [Fantroy's] use of FMLA leave by terminating [Fantroy] from her position of employment due to her taking FMLA leave." (Id. at ¶ 25).

The settlement agreement states in relevant part:

(2) In consideration of the monies, to be paid as provided herein, promises and actions of Publix set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, Fantroy specifically agrees not to sue and to release Publix . . . and **waives any and all claims for damages or other relief that were or could have been raised in the above-captioned case.**

(Doc. # 30-3 at ¶ 2)(emphasis added).

However, pursuant to 29 C.F.R. § 825.220(d),

Employees cannot waive, nor may employers induce employees to waive, their **prospective** rights under FMLA . . . . This does not prevent the settlement or release of FMLA claims by employees based on **past employer conduct** without the approval of the Department of Labor or a court. Nor does it prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a light duty assignment while recovering from a serious health condition.

29 C.F.R. § 825.220(d)(emphasis added).

The provision in 29 C.F.R. § 825.220(d) - "Employees cannot waive, nor may employers induce employees to waive" their rights under FMLA - applies to the waiver of prospective FMLA substantive rights, and as a result does not prohibit Fantroy from asserting her present, post-settlement claim regarding a new instance of alleged employment retaliation. At the time the parties executed the settlement agreement, the FMLA claims Fantroy asserted against Publix involved retaliation as a result of Fantroy's first termination. According to 29 C.F.R. § 825.220(d), Fantroy was unable to waive prospective FMLA rights, which would include her current claim of FMLA retaliation premised upon her second termination.

### a.   Statutorily Protected Activity

It is undisputed that Fantroy was entitled to FMLA leave when she contracted conjunctivitis, and she engaged in a statutorily protected activity when she sought leave because of her medical condition.  In fact, the settlement agreement entered into between the parties contains the following language: "Publix will place Notices in Fantroy's corporate personnel file that her absences for May 18, 22, 23, 24, and 25 were FMLA covered and any levels of discipline associated with these absences are rescinded." (Id.).  Therefore, the

Court finds that Fantroy satisfied the first prong in demonstrating her prima facie case of FMLA retaliation.

### b. **Adverse Employment Action**

In this action, Publix does not contest the fact that Fantroy was terminated on October 18, 2012, from her position. "Termination is an ultimate employment action that is undeniably adverse." Freyes-Torres v. City of Sanford, 270 F. App'x 885, 894 (11th Cir. 2008). Accordingly, the Court finds that Fantroy established the second prong in demonstrating her prima facie case of FMLA retaliation.

### c. **Causal Connection**

To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (internal quotation marks omitted). The Supreme Court has stated that temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient evidence of a causal connection if the temporal proximity is "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); see Drago, 453 F.3d at 1308 (finding that an adverse employment action occurring three months after protected activity is not sufficiently proximate

to show causation); Smith v. Constr. Datafax, Inc., 871 F. Supp. 2d 1226 (N.D. Ala. 2012) (finding that a three-day period between employee's return to work following FMLA leave and employer's decision to terminate employment was sufficient to establish a causal connection); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)(finding a seven week gap sufficiently close to establish a causal connection).

Upon the execution of the settlement agreement in September of 2012, Publix and Lisa Gaye Pate – the agent who terminated Fantroy's employment on October 18, 2012, – were aware that Fantroy engaged in statutorily protected activity. (Lisa Gaye Pate Dep. Doc. # 40 at 30:19-25, 31:1-12). Thereafter, as part of the settlement agreement, Publix reinstated Fantroy to her position as Crème Cake Packer on October 1, 2012. (Doc. # 30 at 6; Doc. # 36 at 1; Fantroy Dep. Doc. # 37 at 140:9-16). Roughly seventeen days later, on October 18, 2012, Fantroy was terminated for a second time. (Doc. # 30 at 7; Doc. # 36 at 8; Fantroy Dep. Doc. # 37 at 108:15-25, 109:1-2). As the timeframe demonstrated above indicates, there was a close temporal proximity – roughly one month – between Lisa Gaye Pate and Publix gaining knowledge

of Fantroy's statutorily protected activity and the adverse employment action.

The Court acknowledges Publix's contention that "temporal proximity is insufficient to establish a prima facie case where [Fantroy] admits contemporaneous misconduct." (Doc. # 30 at 14). However, as the record indicates, Fantroy only admitted to being a no-call, no-show once - on October 5, 2012. (Fantroy Dep. Doc. # 37 at 142:5-12). According to the no-call, no-show policy, an employee would have to engage in two no-call, no-shows within a six month period to be subject to termination. (Fantroy Dep. Doc. # 37 at 98:5-8, 104:25, 105:1-3). Thus, the Court finds Publix's argument inapplicable under the circumstances.

As such, for purposes of summary judgment only, the Court will assume Fantroy has established a prima facie case of retaliation under the FMLA. However, even assuming that Fantroy has established a prima facie case of FMLA retaliation, the Court finds that Publix still prevails in this case because it has provided a legitimate, non-discriminatory reason for Fantroy's termination, and Fantroy has not shown that the proffered reason is pretextual.

## 2.   **Burden Shifting Analysis**

As noted above, when a plaintiff-employee establishes a prima facie case of retaliation, the burden shifts to the defendant-employer to present evidence of a legitimate, non-discriminatory reason for the challenged employment action. Connor, 546 F. Supp. 2d at 1372. The employer's burden is "exceedingly light" Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) and "easily fulfilled" Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 (11th Cir. 1994). The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55. Rather, as long as the employer "articulates a clear and reasonably specific non-discriminatory basis for its actions," it has met its burden of production.  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 770 (11th Cir. 2005) (per curium) (internal quotation marks omitted).

Publix terminated Fantroy's employment on October 18, 2012. (Doc. # 30 at 7; Doc. # 36 at 8; Fantroy Dep. Doc. # 37 at 108:15-25, 109:1-2). The reason articulated by Publix for the termination was that Fantroy violated the no-call, no-show policy on two separate occasions – October 5, 2012, and October 15, 2012. (Doc. # 30 at 7; Doc. # 36 at 8; Lisa Gaye Pate Dep. Doc. # 40 at 76:6-8).

Absenteeism in the workplace is a legitimate, non-discriminatory reason to terminate an employee, which is unrelated to FMLA leave. See <u>Constr. Datafax</u>, 871 F. Supp. 2d at 1239 (finding job abandonment to be a legitimate, non-retaliatory reason to terminate an employee); <u>Bodrick v. BellSouth Bus. Sys., Inc.</u>, No. 1:05-cv-0663RLV, 2006 WL 559239, at *9 (N.D. Ga. Mar. 1, 2006)(finding an employee's non-compliance with employer's attendance policies provides a legitimate reason for terminating an employee); <u>Jirau v. Camden Dev., Inc.</u>, No. 8:11-cv-73-T-33MAP, 2011 WL 4529983, at *5 (M.D. Fla. Sept. 30, 2011)(finding tardiness and absenteeism sufficient reasons to satisfy the employer's burden of demonstrating a legitimate, non-retaliatory reason for terminating employee). As a result, Publix has met its "exceedingly light" and "easily fulfilled" burden of articulation and thus, the presumption of retaliation is destroyed and the burden shifts back to Fantroy to prove that Publix's reason is a pretext for discrimination.

### 3.   <u>Pretext</u>

Fantroy bears the ultimate burden of proving by a preponderance of the evidence that the legitimate, non-discriminatory reason Publix provided is mere pretext for prohibited, retaliatory conduct. <u>Olmstead v. Taco Bell Corp.</u>,

141 F.3d 1457, 1460 (11th Cir. 1998). To make this showing, a plaintiff must present evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Hurlbert, 439 F.3d at 1298 (internal quotation marks omitted). The plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. Atlanta State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted).

Fantroy contends that a reasonable jury could find that Publix's proffered reason for termination is pretextual. (Doc. # 36 at 15). Fantroy submits that her "testimony that she was in the hospital at the start of her shift during the first absence and her testimony that she let them know she was not sure she would be in the night of her second absence are sufficient to cast doubt on Publix's claim that she violated the no call/no show policy." (Id. at 17).

However, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that

24

the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how . . . mistaken the firm's managers, [the Court] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." Id. (internal quotations and citations omitted); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Here, the proffered reason – violation of the no-call, no-show policy - constitutes a reason that might motivate a reasonable employer to terminate an employee. Publix had a no-call, no-show policy and an employee failing to abide by

the policy is an eminently reasonable basis upon which to terminate an employee.

Additionally, Fantroy proffers that she can point "to numerous occasions, other than the no call/no show disputes, in her very short second tenure with Publix in which she was treated badly: Publix tried to discipline her before she even returned due to a misunderstanding about her start date, Publix failed to pay her on time, Publix improperly deducted her wages, and Fantroy was questioned about leaving work early when she was sent home by management and no other employee who was sent home was questioned." (Doc. # 36 at 18). Moreover, "Fantroy's supervisor was 'not excited' about Fantroy's return and later said that 'things looked promising' when she realized she may be able to terminate [Fantroy] '. . . again.'" (Id.). Therefore, Fantroy contends that there is "sufficient circumstantial evidence to show that [Fantroy's] second termination was pretextual, that Publix never intended to actually reinstate Fantroy, and that the intent from day one was to terminate her a second time. (Id.).

These examples provided by Fantroy give rise to little more than conclusory allegations of retaliation and as a result fail to establish that Publix's legitimate reason for

terminating Fantroy was pretextual. Specifically, Fantroy has failed to present sufficient evidence – through affidavits or otherwise – that Publix knew its legitimate, non-discriminatory reason for terminating Fantroy was false and that unlawful discriminatory animus more likely than not motivated Publix's actions. Therefore, the Court concludes that Fantroy has not presented sufficient evidence suggesting Publix's asserted reason for terminating Fantroy's employment – violating the no-call, no-show policy – was not the true reason for her discharge.

**IV. <u>Conclusion</u>**

As previously discussed, the record is void of evidence demonstrating that Fantroy had a "serious health condition," after the parties executed the settlement agreement, that would entitle her to FMLA benefits. As such, this Court grants Publix's Motion for Summary Judgment as to Fantroy's FMLA interference claim.

Furthermore, assuming Fantroy established a prima facie case of FMLA retaliation, Publix has come forward with a legitimate and non-discriminatory reason for terminating Fantroy, and Fantroy has failed to present evidence to refute Publix's proffered reason. As such, Publix's Motion for

Summary Judgment on Fantroy's claim for FMLA retaliation is granted.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment (Doc. # 30) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Defendant and **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>19th</u> day of December, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record